| | |
|---|---|
| JACQUELINE LAVERNE KING, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-20, DE-24] pursuant to Fed. R. Civ. P. 12(c). Claimant Jacqueline Laverne King ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Commissioner is upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on October 5, 2011 and filed an application for SSI on October 24, 2011, alleging disability beginning May 17, 2006 in both applications. (R. 207-16). Both claims were denied initially and upon reconsideration. (R. 65-126, 140-57). A hearing before the Administrative Law Judge ("ALJ") was held on October

24, 2013, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 23-49). On January 9, 2014, the ALJ issued a decision denying Claimant's request for benefits. (R. 8-21). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 6), and submitted additional evidence as part of her request (R. 455-58). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on May 13, 2014. (R. 1-4). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial

evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

3

In this case, Claimant alleges that the ALJ erred by failing to re-contact Claimant's treating physician for a functional limitation opinion, improperly determining Claimant's credibility, and submitting inaccurate hypothetical questions to the VE. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") [DE-21] at 11-19.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment since the amended onset date of July 15, 2011. (R. 13). Next, the ALJ determined Claimant had the following severe impairments: lumbar degenerative disc disease, osteoarthritis in her knees, carpal tunnel syndrome, and obesity. (R. 14). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform a wide range of sedentary work[1] with the following limitations: Claimant "can frequently perform tasks that require fingering and handling. The [C]laimant can occasionally stoop,

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

4

crouch, kneel and crawl. She cannot balance, climb, or work at heights or around dangerous machinery." *Id.* In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 17-18).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a janitor. (R. 19). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 19-20).

**B.     Claimant's Testimony at the Administrative Hearing**

Claimant is a high school graduate, who also took some college courses in psychology. (R. 28-29). Claimant was last employed as a custodian for Wayne County Public Schools, where her duties included mopping, sweeping floors, moving furniture, cleaning, and dusting. (R. 29). Claimant testified that she was standing and walking for most of the day at that job. *Id.* She would have to lift pans that weighed as much as 50 pounds and fill water pails that she would push throughout the school when mopping. (R. 30). Claimant also worked for the Royal Janitorial Service at Mount Olive Pickle Company as a working supervisor of custodians, and which was similar to her position at the school system. (R. 30-31). Claimant worked a number of part-time jobs through a temporary service between 1998 and 2009, but none of those jobs involved full-time work for six months or more. (R. 31). In 2004, while working for Wayne County Public Schools, Claimant injured her right knee and was briefly out of work. (R. 32). Claimant had arthroscopic surgery and then physical therapy for her right knee. *Id.* Claimant then returned to work, where her duties remained the same. (R. 32-33). In 2005, Claimant's knee gave out while she was climbing

5

stairs at work and she fell and injured her back. (R. 33). Claimant has not worked since leaving Wayne County Public Schools after the second injury, but did receive a check for accumulated leave earnings in 2008. *Id.*

Claimant lives part-time with her 83-year-old mother in low-income housing, but can only stay there for 10 days at a time. (R. 33-34). When Claimant cannot stay with her mother, she and her son rent an apartment together. (R. 34). When Claimant was working for the school district, she was found disabled for purposes of North Carolina Disability Insurance. *Id.* After 36 months of receiving benefits, her benefits were reduced by $829.00 for a Social Security offset, even though Claimant had not yet been awarded Social Security benefits. *Id.* Since August 7, 2010, Claimant has received a $320.00 disability payment each month, and also receives health insurance. (R. 35). If Claimant goes to the emergency room, she has to pay a $291.00 co-pay plus 30 percent of the total bill. *Id.* Claimant testified that her income limited her ability to seek treatment beyond what she gets from Dr. Ahmed.[2] *Id.*

At the time of the hearing, Claimant was five feet eight inches tall and weighed 306 pounds. (R. 36). Claimant believes that her weight affects her functional capacity, as she gets tired and short-winded from walking a block. (R. 36-37). Claimant falls over if she tries to bend or stoop. (R. 37). Claimant testified that ever since her fall in 2004, she has pain in her low back every day if she does not take her pain medication (Cymbalta). (R. 37-38). Claimant's low back pain feels like shock pains, which run down her knees to her feet, and her feet and ankles feel numb. (R. 38). Claimant testified that her ankles and feet will swell if she sits for "a length of time." *Id.* Claimant stated that

---

[2] The hearing transcript refers to "Dr. Amad" but the record evidence demonstrates that Claimant was treated by Dr. Maqsood Ahmed. *See* R. 17, 301-25.

6

lifting objects increases her back pain, as does standing for three minutes or washing the dishes. *Id.* Claimant testified that she will feel her back tighten and then the shock pains begin, and she will have to go sit down and return to the task later. *Id.* Claimant testified that she has tried to lift 20 pounds at the grocery store and her hands will give out and "everything will just fall out of [her] hands." (R. 38-39). Claimant takes her pain medication for her back pain and tries to do the exercises recommended by Dr. Ahmed. (R. 39). Claimant also uses a heating pad every day, either on her back or on her knee. *Id.*

Claimant testified that her pain is worse in her left knee than in her right knee. (R. 39-40). Both of Claimant's knees make a grinding noise, and Claimant's left knee has made that noise since 1997. (R. 40). Claimant testified that her knee pain in both knees has gotten worse, and she was in pain on the day of the hearing. *Id.* Claimant stated her knee pain feels like shock pains in her knee caps, and she can stand for two or three minutes before having to sit down. *Id.* Claimant also testified that she was in pain from sitting during the hearing. *Id.* Claimant has had wrist trouble since 2011, and wears splints as prescribed by Dr. Ahmed. (R. 40-41). Claimant has received injections in both hands and both knees, and testified that she feels numb right after the injections, and then two to three hours later still experiences pain, but not as much as before. (R. 41). Dr. Ahmed has talked to Claimant about injections for her back pain, but Claimant said she was "paranoid" about not being able to move while receiving the injections and has declined that treatment. *Id.*

Claimant recently began experiencing depression, but she does not discuss it with Dr. Ahmed because she thought he was primarily a pain doctor. (R. 41-42). Dr. Ahmed diagnosed Claimant with depression and prescribed her Cymbalta. (R. 42). Claimant testified that she is depressed all

7

the time, and sometimes she cries a lot. *Id.* Claimant's mother is still ambulatory, and has a home health aid. *Id.* Claimant's son is a mentally handicapped adult, and he attends a day program. (R. 42-43). Claimant does not have a driver's license and has never driven because she has "been paranoid of that[.]" (R. 43). On a typical day, Claimant gets up, takes a bath, brushes her teeth, and takes her medication. *Id.* Claimant testified that sometimes her Cymbalta and Vicodin make her feel paranoid, light, numb, or in a daze, which makes it difficult to concentrate and go about her daily activities. (R. 43-44). Claimant testified that she will make sandwiches for meals, or eats at her mother's house when the home health nurse helps her mother cook. (R. 44). Claimant tries to help her mother with the laundry and washes her own clothes at her mother's house. *Id.* Claimant does not believe she can do her past work, and does not know whether she could do a full-time job where she was sitting down because she has not tried it. (R. 44-45). Claimant went to a vocational advisor and was told they did not have any jobs for her. (R. 45). Claimant testified that she has to lay down and rest basically all day because the Cymbalta makes her paranoid, and she essentially sleeps all day and does not really have a life. *Id.*

### C. Vocational Expert's Testimony at the Administrative Hearing

Julie Sawyer-Little testified as a VE at the administrative hearing. (R. 45-48). After the VE's testimony regarding Claimant's past work experience (R. 46), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed two hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual has the physical capacity to perform sedentary work with the following limitations: "use of the hands for fingering would be limited to frequent, [the] individual would be limited to no balancing, no climbing, no working at heights, around

8

dangerous machinery, and [the] individual could only occasionally stoop, crouch, kneel, and crawl."
(R. 46-47). The VE stated that such an individual could not perform the Claimant's past relevant work, but could perform the following jobs: order clerk (DOT # 209.567-014, sedentary, SVP-2); charge account clerk (DOT # 205.367-014, SVP-2); and call-out operator (DOT # 237.014, sedentary, SVP-2). (R. 47). The ALJ then modified the hypothetical to occasional use of the hands for fingering and handling, and the VE responded that there were no occupations that such an individual could perform. *Id.* Attorney for Claimant then asked whether the unskilled sedentary job base would be significantly eroded if the first hypothetical individual had an additional limitation of needing two or more absences per month due to symptoms and required frequent breaks above and beyond the morning, afternoon, and lunch breaks, to which the VE responded in the affirmative. (R. 48).

## V. DISCUSSION

### A. The ALJ's Consideration of Claimant's Functional Limitations

Claimant argues that the ALJ should have recontacted Dr. Ahmed for a functional limitation opinion and the failure to do so resulted in an RFC that is not supported by substantial evidence. Pl.'s Mem. [DE-21] at 11-16. Claimant contends that because Dr. Ahmed did not opine as to functional limitations, it is unclear how the ALJ determined Claimant's RFC, particularly the finding that Claimant can frequently perform handling and fingering, and the ALJ improperly relied on the raw medical data and used his own lay opinion to make this determination. *Id.* at 12. In response, the Commissioner argues that the Claimant relies on regulations that are no longer in effect and the ALJ is no longer required to recontact a treating physician in this situation. Def.'s Mem. [DE-25] at 6-9.

9

As this court has recognized, "[t]he regulations clearly state that an ALJ's duty to recontact a treating source arises only when the evidence as a whole is inadequate to determine the issue of disability." *Parker v. Astrue*, 792 F. Supp. 2d 886, 895 (E.D.N.C. 2011) (citing 20 C.F.R. §§ 404.1512(e), 404.1527(c)(2), 416.912(e), 416.927(c)(2)); *see also Hawley v. Colvin*, No. 5:12-CV-260-FL, 2013 WL 6184954, at *6 (E.D.N.C. Nov. 25, 2013) (unpublished) (recognizing that "*Parker* accurately stated the standard for when the ALJ must recontact a treating physician"). The court recognizes that the regulations since *Parker* have undergone changes to include different language and certain regulations have been recodified in similar form elsewhere. *Wilson v. Colvin*, No. 5:12-CV-762-FL, 2014 WL 69609, at * 7 (E.D.N.C. Jan. 8, 2014) (unpublished); *see also* 20 C.F.R. §§ 404.1512(e), 404.1527(c)(2), 404.1520b, 416.912(e), 416.927(c)(2), 416.920b. However, the regulations in past and current form continue to support the standard articulated in *Parker*. *Hawley*, 2013 WL 6184954, at *6 ("[T]he regulations in past and current form clearly state that the ALJ's duty to recontact a treating source arises only when the evidence as a whole is inadequate to determine the issue of disability.").

Applying this standard to the instant case, the ALJ did not have a duty to recontact Dr. Ahmed, as the evidence in the record was sufficient for the ALJ to make a disability determination. Here, the medical record evidence with regard to Claimant's carpal tunnel syndrome demonstrates that throughout Claimant's treatment relationship with Dr. Ahmed, she wore splints and received wrist injections, both of which helped with her wrist pain from her carpal tunnel syndrome ("CTS"). (R. 303-04–treatment note from June 1, 2012, noting that Claimant was wearing splints and they were helping with her CTS); (R. 301-02–treatment note from June 15, 2012, noting same); (R. 308–treatment note from July 30, 2012, noting that Claimant's hand splints were helping some,

10

although Claimant's pain was an 8/10, and Claimant was to receive a left wrist median nerve block injection); (R. 312-13–treatment note from September 7, 2012, noting that Claimant's left wrist and hand pain improved after the injection and scheduling an injection for Claimant's right wrist); (R. 314–treatment note from September 11, 2012, documenting Claimant's right wrist injection and noting that Claimant's pain is a 7/10); (R. 317–treatment note from May 29, 2013, noting that Claimant's last wrist injection was in September of 2012, advising Claimant to continue wearing her splints, and ordering an injection).

Further, to the extent that Claimant argues the ALJ was required to have a medical opinion as to Claimant's ability to handle and finger because the ALJ cannot make his own specific medical findings, Pl.'s Mem. [DE-21] at 14, this argument is without merit. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) provide that the Commissioner will consider medical opinions as to a claimant's RFC, but clearly states that "the final responsibility for deciding these issues is reserved to the Commissioner." And to the extent that Claimant relies on *Rohan v. Chater*, 98 F.3d 966 (7th Cir. 1996), for the proposition that ALJs cannot make specific medical findings, Claimant's reliance on this case is misplaced where that case is both from out of circuit and factually distinguishable from the facts at hand. In *Rohan*, the ALJ substituted his own opinion for that of a treating physician by determining that the claimant's "efforts at engaging in a small machine repair/resale business were incompatible with a diagnosis of major depression" and the treating physician's conclusions regarding the claimant's functional abilities. *Id.* at 970. In contrast, in the instant case, there is no opinion from a treating physician on this issue, and the ALJ properly considered the evidence presented to reach a conclusion as to Claimant's RFC. Additionally, there is no indication that the ALJ failed to acquire any of the records from Dr. Ahmed's treatment of Claimant. To the contrary,

11

the medical record was developed and spanned almost a year of treatment and examination. Accordingly, the record was sufficient for the ALJ to make a disability determination and there was no need for the ALJ to re-contact Dr. Ahmed. Claimant's argument that the RFC determination is unsupported by substantial evidence due to the ALJ's failure to recontact Dr. Ahmed is similarly without merit.

**B.    The ALJ's Credibility Determination**

Claimant contends that the ALJ's determination that the Claimant was not entirely credible is not supported by substantial evidence. Pl.'s Mem. [DE-21] at 16-18. Specifically, Claimant argues that the ALJ improperly considered Claimant's weight gain, her lack of effort to bend at the waist during a consultative examination, her difficulty rising from a chair and the exam table, her willingness to wear splints, and her inability to afford medical treatment. *Id.* In response, the Commissioner argues that the ALJ did not err in the credibility analysis. Def.'s Mem. [DE-25] at 6-13.

When assessing a claimant's RFC, it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593-94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 96-7p, 1996 WL 374186, at *2

(July 2, 1996); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564-65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." S.S.R. 96-7p, 1996 WL 374186, at *3 (showing the complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595-96. But neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *2; *see also Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4-8 (E.D.N.C. Mar. 23, 2011) (unpublished) (finding the ALJ properly considered the entire case record to determine that claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

The ALJ determined that Claimant was not fully credible as to the intensity, persistence, and limiting effects of her symptoms, noting the following:

> [t]he claimant has minimal anatomical structural deformities but there is no evidence of ongoing nerve root compression, which might be expected based on the degree of pain alleged. The treatment regimen indicates that the claimant's symptoms are not as intractable as alleged. In addition, the medical evidence do[es] not reveal any evidence of a change in motor tone or bulk such as disuse atrophy, which might be expected in a person whose activities are markedly restricted due to a debilitating disease process. These factors indicate that the claimant's allegations

13

of functional restrictions are not fully credible.

        In terms of the claimant's alleged back pain, knee pain, and carpal tunnel syndrome she reported to Dr. Kolluru at her examination on April 2, 2012 that bending, lifting, sitting, standing, stooping, climbing and walking made her pain worse, but she had testified that she was able to do laundry, lift 20 pounds and she was able to grocery shop. She had also reported that she had to stop working due to problems with her back and knee. She acknowledged that she has gotten injections in her hands and knees for relief.

        The records showed that the claimant had an increase with her weight. In April 2012, the claimant weighed 300 pounds without shoes. Dr. Kolluru had stated on examination, that the claimant made no effort to bend at [the] waist and she had mild difficulty getting up from a chair on the examining table. This examiner had stated that the claimant had insurance, but she has not been to a provider for further evaluation. Although she had diagnosis of carpal tunnel syndrome, the medical evidence noted throughout that she wore splints, and they helped. These factors indicate that the claimant's allegations of functional restrictions were not fully credible.

(R. 17-18).

Claimant argues that the ALJ erred by emphasizing Claimant's failure to try and bend at the waist during an April 2012 consultative examination when Claimant performed other maneuvers upon request at the same examination. Pl.'s Mem. [DE-21] at 17. Additionally, Claimant argues that her difficulty rising from a chair and an exam table bolsters her credibility, as does her willingness to wear splints to help with her CTS. *Id.* Claimant, however, mischaracterizes the ALJ's reliance on these pieces of evidence. The ALJ points out that Claimant only had mild difficulty getting up from a chair and from the exam table, in contrast to Claimant's refusal to try and bend at the waist. (R. 18). This inconsistency shows that Claimant was not as limited as alleged. Further, the fact that Claimant's CTS improved when she wore splints demonstrates that her symptoms improved with moderate treatment. Further, Claimant's argument that the ALJ penalized Claimant for not seeking treatment due to financial difficulty is without merit. *See* Pl.'s Mem. [DE-21] at 17. The ALJ noted that Dr. Kolluru stated in the examination that Claimant had health insurance, but

14

had not been to a provider for further evaluation. (R. 18). Claimant points to her hearing testimony about how her North Carolina disability benefits have been offset by a hypothetical Social Security amount, limiting her ability to seek treatment beyond her care with Dr. Ahmed in support of her argument that she had financial difficulty seeking treatment. Pl.'s Mem. [DE-21] at 17-18. This testimony, however, refers to a different time period. Claimant did not begin seeing Dr. Ahmed until May of 2012–after the consultative examination. (R. 323–first treatment note from Dr. Ahmed dated May 8, 2012). At the time of Claimant's consultative examination with Dr. Kolluru in April of 2012, the most recent medical records were from August of 2011. (R. 289–treatment note from August 30, 2011 with Southeastern Orthopedics Sports Medicine & Shoulder Center). There are no medical records between August 2011 and the consultative examination in April 2012. Thus, Dr. Kolluru's statements refer to Claimant's apparent complete lack of treatment during this time period. Here, the ALJ appropriately discussed how Claimant's symptoms improved with treatment, how Claimant's refusal to attempt some activities was inconsistent with only having mild difficulty performing other activities during the same examination, and how Claimant had insurance but did not appear to be seeking treatment in support of his finding that Claimant was not fully credible.[3] (R. 17-18); *see* S.R.R. 96-7p, 1996 WL 374186, at *3 (listing factors the ALJ is to consider when assessing a claimant's credibility). Accordingly, Claimant's argument is without merit and substantial evidence support's the ALJ's determination that Claimant was less than fully credible.

---

[3] Claimant also argues that the ALJ improperly considered her weight gain at the time of the consultative examination to find her less than fully credible. Pl.'s Mem. [DE-21] at 16. Any error here is harmless where the ALJ's credibility determination is otherwise supported by substantial evidence. *See Taylor v. Astrue*, No. 7:11-CV-162-FL, 2012 WL 3637254, at *9 (E.D.N.C. Aug. 1, 2012) (unpublished) ("[T]he court finds any error the ALJ committed in commenting on Claimant's weight gain harmless in light of other [credibility] findings by the ALJ which are supported by substantial evidence . . . ."), *adopted by* 2012 WL 3636923 (E.D.N.C. Aug. 22, 2012).

15

## C. The ALJ's Hypothetical Questions to the VE

Claimant contends that due to the ALJ's failure to recontact Dr. Ahmed and the resulting problematic RFC and the ALJ's error in determining Claimant's credibility, the ALJ's step five determination is unsupported by substantial evidence where the hypothetical questions posed by the ALJ were incomplete. Pl.'s Mem. [DE-21] at 18-19. In response, the Commissioner argues that the ALJ's hypothetical fully incorporated Claimant's credible RFC. Def.'s Mem. [DE-25] at 13.

The purpose of a VE's testimony is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). In order for a VE's opinion to be "relevant or helpful," it must be given in response to a proper hypothetical question. *Id.* A proper hypothetical question "fairly set[s] out all of claimant's impairments" that are supported by the record. *Id.*; *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (per curiam) (unpublished) (holding the ALJ's hypothetical question "adequately contemplated all of [Claimant's] impairments and resulting limitations" as evidenced by the record); *Cannon v. Astrue*, No. 4:08-CV-160-D, 2010 WL 902485, at *2 (E.D.N.C. Mar. 11, 2010) (unpublished) (same). Further, the task of the reviewing court is simply to determine whether substantial evidence supports the ALJ's decision, not to "substitute [its] judgment for that of the [Commissioner]." *Mastro*, 270 F.3d at 176.

Claimant's argument as to the Step 5 determination relies on her earlier arguments that the ALJ erred by failing to recontact Dr. Ahmed and in determining her credibility. However, as discussed above, those arguments are without merit. Accordingly, as Claimant offers no other support for her argument on this issue, this argument is similarly without merit and there is no error in the ALJ's hypothetical question posed to the VE and the step five determination.

16

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-20] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-24] is ALLOWED, and Defendant's final decision is affirmed.

So ordered, this the 24th day of September, 2015.

Robert B. Jones, Jr.
United States Magistrate Judge